**• IN RE: ADVISORY OPINION TO GOVERNOR**

19 So. (2nd) 370                                              June Term, 1944
September 30, 1944                                              En Banc

PER CURIAM:

SUPREME COURT OF FLORIDA
RIVERS BUFORD, Chief Justice
Tallahassee
September 29, 1944

Division A                              Division B
Justices                                Justices
GLENN TERRELL                           ARMSTEAD BROWN
ROY H. CHAPMAN                          ELWYN THOMAS
ALTO ADAMS                              HAROLD L. SEBRING
Guyte P. McCord, Clerk                  R. S. Williams, Marshall

Hon. Spessard L. Holland, Governor
The Capitol
Tallahassee, Florida

Dear Governor:

We have your request as authorized under Section 13 of Article IV and Section 6 of Article IV of our Constitution, as follows:

"Under the provisions of Section 13 of Article IV of the Constitution of the State of Florida, I have the honor to request your written opinion in interpretation of my executive powers and duties under the Constitution of Florida as to the following:

"Section 6 of Article IV of the Constitution requires that 'The Governor shall take care that the laws be faithfully executed.' Among the important duties devolving upon the Governor, under his Constitutional mandate to see that the laws be faithfully executed, is the issuance of death warrants in capital cases, commanding the execution of the sentence of death against any person who shall have been duly convicted in our Courts of any crime for which legal sentence of death shall have been awarded against him. There are few, if any, duties devolving upon the Governor which have more direct relation to the faithful execution of the laws than the proper issuance of death warrants. On yesterday, September 28, the Supreme Court of Florida filed its opinion and entered its judgment dismissing the appeal of the defendants, Freddie Lee Lane, James Davis and James C. Williams, appellants in that certain appeal taken from the sentence and judgment of death awarded against each of them in the Circuit Court of Alachua County, and I was officially furnished late yesterday afternoon with a copy of said opinion, as well as of the mandate from the Supreme Court of Florida dismissing said appeal.

"At 9:30 last night I was called upon at my home by the Attorney General of Florida, the Honorable J. Tom Watson, acompanied by an Assistant Attorney General, the Honorable John C. Wynn, and by the State Attorney of the Second Judicial Circuit of the State of Florida, the Honorable O. C. Parker, Jr., in whose Circuit the cases of said named appellants had originally arisen, and who had handled the prosecution of said appellants in the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, under Executive Order entered by me as Governor. At that time the Attorney General delivered to me a written document styled 'Request of His Excellency the Honorable the Governor of the State of Florida, Made Under Section 922.09, Florida Statutes,

1941,' of which I attach a true copy hereto. Said document signed by the Attorney General, the said State Attorney, and the said Assistant Attorney General, formally requested me to issue death warrants for the execution of the said appellants and to fix in said death warrants the time for the execution of said persons for the week beginning with Monday, October 2, 1944. I understand from the Attorney General that he is in process of obtaining from the Clerk of the Circuit Court of Alachua County a certified copy of the whole record of the conviction and sentence of said persons, including the record and the appeal to the Supreme Court of Florida, and of the dismissal thereof, which mentioned proceedings in the Supreme Court are, of course, not included in the certified copy of the record of the conviction and sentence heretofore delivered to me   The Attorney General advises me that he expects to deliver to me the certified copy of the whole record of the conviction and sentence of these appellants sometime today.   Upon receipt by me of such certified copy, and approval thereof, the duty will devolve upon me to issue appropriate death warrants against these three appellants.   I feel that it is proper to add that the opinion of the Attorney General expressed in the written request above mentioned is consistent with his two prior official opinions heretofore rendered to me under respective dates of September 2 and September 20, 1944, and I attach hereto true copies of both his said opinions.

"It has been my understanding of the applicable provisions of the law, being Sections 922.09, 922.10, 922.11, Florida Statutes, 1941, that the law requires that not less than five days shall elapse between the issuance of any death warrant and the Monday of the week designated by the warrant for the execution of the sentence of death, during which period the person sentenced to death shall be held at the State Prison in the custody of the Superintendent of the State Prison, or his deputy, in his absence.

"I have been proceeding under this interpretation and understanding of the law in the issuance of all death warrants which I have issued during my term of office, and I am advised that my predecessors in office have always so proceeded.

"The prompt enforcement of the judgments of our Courts, including judgments in capital cases, is a vital part of the procedure, and it is my desire in these and other cases that the death warrant may be so issued as to require the execution of the persons sentenced to death as promptly as the law will permit.

"I, therefore, respectfully request your opinion, assuming that these death warrants may be legally issued by me today, September 29, or not later than tomorrow, September 30, as to whether the law would require me to fix the designated week for the executions not earlier than the week beginning with Monday, October 9, or whether such warrants could legally fix the week beginning Monday, October 2, as the week of the executions. I feel that it is highly important that this law be settled for my guidance and the guidance of future Governors in the issuance of death warrants.

"Respectfully submitted,
(Spessard L. Holland)
Governor of Florida."

Your letter indicates the necessity of your request in this regard.

Under the latter Section above referred to, the executive duty is imposed upon the Governor to "take care that the laws be faithfully executed." The question presented by you is one which comes within the purview of Section 13 of Article IV, supra. See Advisory Opinions to Governor, 61 Fla. 1, 55 So. 460; 92 Fla. 989, 111 So. 252, wherein we held:

" 'Executive powers and duties' has been construed to mean a duty appertaining to the execution of the laws as they exist."

Therefore, it is proper for us to comply with your request.

Your executive duties involved here in regard to the execution of the sentence of death imposed upon one convicted of crime are prescribed by Sections 922.09 et seq. Florida Statutes, 1941, (same F.S.A.).

Section 922.09, supra, provides, inter alia, as follows: "and the sentence of death shall not be executed upon such convict until a warrant shall be issued by the Governor,

under the seal of the State, with the copy of the record thereto annexed commanding the execution of the sentence of death to be done, and fixing therein some designated week, beginning with Monday, in which week such sentence shall be executed pursuant to such warrant and according to the manner and means hereinafter prescribed."

Section 922.11, Florida Statutes, 1941, provides, inter alia:

"Not less than five days prior to the week of execution, the person sentenced to death shall be kept securely in or adjacent to the permanent death chamber, and the sentence of death shall be carried out on some week day of the week fixed by the Governor as the week of execution, the time of carrying out such sentence to be decided by the superintendent of the State Prison, or his deputy in his absence, death or disability."

In the case of Ex Parte Jeffcoat, 109 Fla. 207, 146 So. 827, the question of time required to elapse between the date of the issuance of the death warrant and the beginning of the week in which execution was required by the death warrant was not involved, because in that case the record showed that the warrant was issued on the 14th day of March, 1933, and required the execution to be during the week beginning March 20th. So the full five days contemplated by the statutes, supra, had elapsed. The only question presented in that case was whether or not the statute mandatorily required the convict to have ben five days in the death cell and we held this provision of the statute to be directory and that confinement in the state prison in a place near the death cell was a sufficient compliance.

It is our opinion that the intent of the statute is to mandatorily require that the convict be kept securely in the State Prison, in or near the death cell, for at least five days after the issuance of the death warrant and before the beginning of the week set in the warrant as the week during which he shall be executed. When this five day period is to run and be observed, cannot be known until the death warrant shall have been issued.

We are of the view, considering these statutes in paria materia, that it was the intent of the Legislature to definitely

accord the convict the benefit of this short period of time in which to see and confer with his attorney, relatives and friends, and within which to take any final action which might appear legally available to save or prolong his life and that he would be available at a place certain and in the custody of a certain person, or in which to prepare for death. The law in this regard must be construed to apply to every convict, regardless of his color or creed.

We, therefore, conceive it to be your duty to issue the death warrant so that at least five days may elapse between the date of the issuance of the death warrant and the beginning of the week during which the execution as thereby directed shall occur.

Respectfully,

RIVERS BUFORD,

Chief Justice

GLENN TERRELL

ARMSTEAD BROWN

ROY H. CHAPMAN

Justices of the Supreme Court
of Florida

We, the undersigned Justices, do not think the request of the Governor comes within the purview of Section 13, Article IV of the Constitution and, therefore, decline to participate in any advice in this regard.

Respectfully,

ELWYN THOMAS

H. L. SEBRING

Justices of Supreme Court

I decline to participate in the opinion because the request is not for an interpretation of any part of the Constitution of Florida touching the executive powers or duties of the Governor.

ALTO ADAMS

Justice Supreme Court